UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| PAUL MCKAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:06-CV-267 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| RELIANCE STANDARD LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

This action is brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"). Before the Court are Defendant Reliance Standard Life Insurance Company's ("Reliance") motion for judgment as a matter of law on the ERISA record (Court File No. 61) and Plaintiff Paul McKay's ("Plaintiff") second motion for judgment on the pleadings (Court File No. 63). At the time this initial action was brought, Plaintiff asserted claims against Reliance, Unumprovident Corporation, and Unum Life Insurance Company ("Unum"). Plaintiff sought a determination by the Court as to which policy governed his claims for long-term disability benefits. Having concluded Plaintiff was not covered under Unum's policy, the Court dismissed the Unum defendants and remanded Plaintiff's claims against Reliance for additional administrative review (Court File No. 33).

Reliance investigated Plaintiff's claims and determined Plaintiff was not insured by Reliance for the claimed disability (Administrative Record ("AR"), pp. 1-7). The Court granted Plaintiff's motion to reopen and reinstated Plaintiff's claims against Reliance (Court File No. 53). Defendant

filed the instant motion for judgment on the ERISA record (Court File No. 61) denying Plaintiff's claims. Plaintiff filed a cross motion to enter judgment on the ERISA record or, in the alternative, to enter judgment in his favor against Unum (Court File No. 63). The Court heard oral arguments on the parties' motions on December 14, 2009. After carefully considering the arguments advanced at the hearing, the motions for judgment on the record as well as the responses in opposition and parties' supporting briefs and documentation (Court File Nos. 61, 62, 63, 64, 65, 66, 67), the Court will **GRANT** Defendant's motion for judgment on the record (Court File No. 61) and will **DENY** Plaintiff's motion (Court File No. 63).

## I. RELEVANT FACTS

From September 1999, until his termination on January 19, 2004, Plaintiff was employed by U.S. Xpress Enterprises, Inc. ("U.S. Xpress") as legal counsel (Court File No. 64, pp. 4-5; AR at p. 1703). During this time, Plaintiff developed significant cervical spine problems and an MRI revealed "severe stenosis of the neural foramen at C6-7 with nerve root impingement" caused by degenerative disc disease at C5-6 and C6-7 (AR at p. 328). Plaintiff underwent surgery on his neck in June 2003 (AR at p. 324). Although his symptoms improved for a few months, the pain began to obstruct "his function to a greater and greater degree till the point at the end of 2003 he became" unable to function to an "adequate degree" (AR at p. 17). Plaintiff describes this time as "in the fall of 2003 the pain in my neck and upper back got worse, and I was in at least as much pain as I was prior to my operation" (AR at p. 9).

Plaintiff "continued to try to work from September through December, but [his] pain got worse . . . and [he] had to take time off fairly frequently" (AR at p. 9). Plaintiff reported to his

2

supervisor he was suffering from the flu and worked from home for most of December 2003 (AR at p. 1703). Plaintiff states "the last day I went into the office to try to work was on or around December 19, 2003. About that time, I came down with the flu, and did not go back to work after that" (AR at p. 9). In January 2004, when he claims his flu improved, he attempted to get a release from his doctor to return to work, however, his "back pain and neck pain had become so bad [he] could not go into work" (*id*.). Plaintiff was terminated on January 19, 2004, and was paid through January 16, 2004 (AR at p. 1703).

U.S. Xpress offered eligible employees a benefits package that included participation in a long-term disability plan, which was insured by Unum until December 31, 2003, at 12:00 a.m. and Reliance effective January 1, 2004 (Court File No. 64, p. 6; AR at p. 1009). Plaintiff submitted a claim for long-term disability benefits to Unum, which was denied on December 20, 2005, due to Plaintiff's inability to demonstrate a 20% loss in earnings until January 2004, after the Unum policy had expired (AR at pp. 2507-08). Plaintiff applied for and received Social Security disability benefits in 2005, and Social Security determined Plaintiff has been disabled since December 17, 2003 (AR at pp. 10, 2266).

Plaintiff subsequently submitted a claim with Reliance in March 2006 (AR at pp. 2620-26). Pursuant to the provisions of Reliance's executive policy,[1] coverage begins under its "Transfer of Coverage" provision without the policy's 60-day waiting period if certain conditions are met.

> If an employee was covered under any group long term disability insurance plan maintained by you prior to this Policy's Effective Date, that employee will be

---

[1] The Court previously remanded this action, in part, to determine which of Reliance's policies, "basic" or "executive," should be applied to assess Plaintiff's coverage (Court File No. 33, p.17). Based on information provided by U.S. Xpress, it is now undisputed Reliance's "executive" policy LTD109638 should be analyzed to determine Plaintiff's eligibility (AR at pp. 1, 8).

3

insured under this Policy, provided that he/she is Actively At Work and meets all of the requirements for being an Eligible Person under this Policy on its Effective Date. If an employee was covered under the prior group long term disability insurance plan maintained by you . . . but was not Actively At Work due to Injury or Sickness on the effective date of this policy and would otherwise qualify as an Eligible Person, coverage will be allowed under the following conditions: (1) The employee must have been insured with the prior carrier on the date of the transfer; and (2) Premiums must be paid; and (3) Total Disability must begin on or after this Policy's Effective Date.

(AR at p. 1054).

The term "Actively at Work" is defined as "actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an injury or sickness" (AR at p. 1051). A "Total Disability" occurs when "an Insured cannot perform the material duties of his/her regular occupation" as a result of an injury or sickness (AR at p. 1052). In June 2008, after this Court's remand for additional investigation, Reliance denied Plaintiff's claim (AR at pp. 1-7). In support of its denial, Reliance asserted Plaintiff failed to meet the "Actively at Work" requirement as of the policy's effective date of January 1, 2004, and Plaintiff's claimed date of disability was prior to the date Reliance's policy went into effect (*id*.).

Reliance asks this Court to affirm its decision to deny benefits to Plaintiff whereas Plaintiff contends Reliance's determination Plaintiff never became covered under the policy is arbitrary and capricious. In the alternative, Plaintiff asks this Court to revisit its ruling in favor of Unum if it is determined Plaintiff was not actively at work under Reliance's policy.

## II.     STANDARD OF REVIEW

Both Plaintiff and Reliance seek judgment on the administrative record with respect to Plaintiff's claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B). In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), the Sixth Circuit set forth "suggested guidelines" for adjudicating ERISA benefit denial proceedings brought under § 1132(a)(1)(B). *Id.* at 619 (Gilman, J., concurring and delivering the opinion of the panel as to the applicability of summary judgment proceedings to ERISA cases). The proper procedure for adjudicating a § 1132(a)(1)(B) action is to review the administrator's decision at issue, not conduct a bench trial or make a summary judgment determination. The court should review a benefits denial decision based "solely upon the administrative record" and "render findings of fact and conclusions of law accordingly." *Id.*

A denial of benefits decision "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties do not dispute Reliance's policy includes such a grant of discretion (Court File No. 64, p.9; Court File No. 62, p.5).

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.

(AR at p. 1056).

When discretionary authority is granted, "the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation marks and citation omitted). The Sixth Circuit has described this standard as "the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins.*

5

*Co.*, 347 F.3d 161, 169 (6th Cir. 2003). Under the arbitrary and capricious standard, the plan administrator's decision will be upheld if it was "rational in light of the plan's provisions." *Id*. Alternatively, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). In reviewing an administrator's decision, the court may only consider "the facts known to the plan administrator at the time he made his decision." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

While the arbitrary and capricious standard is highly deferential, it is not "without some teeth" and courts should not be mere "rubber stamps" for plan decisions. *McDonald*, 347 F.3d at 172. An administrator's decision should not be upheld where there is an absence of reasoning in the record to support it. *Id*. Furthermore, a conflict of interest is present when the insurer decides whether benefits should be awarded and pays for those benefits. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 299 (6th Cir. 2005). Although the conflict of interest does not alter the standard of review, it is a factor that must be considered when evaluating whether an administrator's decision was arbitrary and capricious. *Id*. at 298-99.

**III. DISCUSSION**

Plaintiff claims he is entitled to benefits under the "Transfer of Insurance Coverage" provision in his policy, which allows for coverage if a claimant is "Actively at Work" when the policy became effective. Alternatively, if Plaintiff was not "Actively at Work" on this date, he may still be afforded coverage if he was insured with a prior carrier on the date of the transfer, premiums were paid, and total disability began after the policy's effective date. Reliance made the

determination Plaintiff was not actively at work after January 1, 2004, when the policy became effective. In addition, Reliance found Plaintiff otherwise ineligible for coverage as his disability began prior to the policy's effective date. Plaintiff appeals both determinations, claiming he was actively at work in January 2004, and his disability began after the Reliance policy was in effect. As an alternate recovery, should the Court uphold Reliance's denial, Plaintiff asks the Court to revisit its decision in favor of Unum, as Plaintiff argues certain compensation received in December 2003 and January 2004 would not constitute "earnings."

### A. Actively at Work

Reliance denied Plaintiff's claims based in part on its finding Plaintiff was not actively at work after January 1, 2004. In support of this conclusion, Reliance relied on Plaintiff's sworn statement referring to his last day in the office as "December 19, 2003," or possibly "December 30 or 31" (AR at p. 9) and information Plaintiff provided in his application for Unum benefits reflecting his last day of work as "12-19-03" (AR at p. 304). Plaintiff argues he was, in fact, actively at work because he worked from home in January 2004, he continued to receive his full-time salary, his absence from work due to the flu was not a "sickness" as defined by the policy, and because he was paid for 14.6 hours of vacation in January.

Reliance's definition of "Actively at Work" explicitly requires Plaintiff be "in the place where and the manner in which the job is normally performed" (AR at p. 1051). This definition also excludes "time off as a result of an injury or sickness" (*id*.). ERISA plan provisions should be interpreted "according to their plain meaning, in an ordinary and popular sense." *Univ. Hosps. of Cleveland v. S. Lorain Merch. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006). *See also Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372 (6th Cir. 1996) ("Federal law gives

7

effect to straightforward language in ERISA-governed plans").

It is undisputed Plaintiff did not return to work at his office after December 31, 2003. It is unclear what period of time Plaintiff was home with the flu and what time was spent working from home, but under the plain language of the policy, neither time would constitute his being "Actively at Work" at the place where the job is normally performed. Plaintiff contends he was working from home and cites *Davis v. First Union Corp. Long Term Disability Plan*, 213 F. Supp. 2d 29 (D. Mass. 2002) for his argument working from home should not defeat coverage under the Actively at Work requirement. However, in *Davis*, the plaintiff was a loan officer and was "expected to spend most of her time out of the office 'on the road'" developing contacts and meeting with clients and realtors. *Id.* at 31. (internal citations omitted). Unlike the definition in the instant case, the policy language in *Davis* included coverage if the employee "was at a location to which the Participating Employer's business requires the Employee to travel." *Id.* Here, Plaintiff was working from home because he purported to have the flu (AR at p. 1703). His home was not the "place or manner" in which his job was normally performed. Thus, *Davis* provides no support for Plaintiff's argument.

Plaintiff points to his receipt of a salary for a full two-week pay period on January 2, 2004 (AR at p. 1557) and January 16, 2004 (AR at p. 1555) as evidence of his being "Actively at Work." Receipt of a full salary is circumstantial evidence of full-time employment, but is not necessarily determinative in light of Reliance's policy definition, which limits performance to the place where the work is normally performed. Other evidence in the record detracts from any inference Plaintiff was receiving his salary due to continued full-time work (Court File No. 64, p. 12 ("it is conceded that [Plaintiff's] performance was increasingly ineffective, and that he was getting very little done."); AR at p. 1451(indicating Plaintiff received full pay because he "had been telling [U.S.

8

Xpress] he was working from home . . . [U.S. Xpress] did not realize how little work was being done until after [Plaintiff] was terminated.")). It was, therefore, not unreasonable for Reliance to find Plaintiff was not actively performing the material duties of his occupation on a full-time basis despite Plaintiff's receipt of a salary in January 2004.

Plaintiff argues his absence from work with the flu would not constitute a "Sickness" under Reliance's policy definition and therefore his time spent at home with the flu would be "Actively at Work." The term "Sickness" is defined as "illness or disease causing Total Disability" (AR at p. 1052). By its plain meaning, if Plaintiff was unable to perform the material duties of his occupation due to the flu, it would follow that his flu constituted a "Sickness." More importantly, underlying Plaintiff's failure to perform full-time the material duties of his occupation in December 2003 was his neck pain as well as his flu (AR at p. 9). The pain on its own was preventing Plaintiff from going in to the office and performing the material duties of his position, therefore Plaintiff's argument a flu is not a sickness is beside the point.

Finally, Plaintiff claims his receipt of 14.6 hours of vacation pay establishes he was "Actively at Work" because the policy definition "includes approved time off such as vacation" even though it excludes "time off as a result of an Injury or Sickness" (AR at p. 1052). Plaintiff received his full salary for 80 hours on both January 2, 2004, and January 16, 2004, as well as a check for 14.6 hours of vacation on January 9, 2004. As discussed above, receipt of pay designated "vacation pay" is circumstantial evidence Plaintiff was on vacation, however other evidence in the record detracts from any inference created. Plaintiff's own statements as well as statements by U.S. Xpress do not support a conclusion Plaintiff was on "approved time off" for a vacation (AR at pp. 9, 1703 ; Court File No. 27, p. 7). The issuance of the check in the middle of a regular two-week pay cycle

9

also suggests Plaintiff was receiving pay for vacation hours rather than taking "approved time off" for vacation as it would be commonly understood. Therefore, it was reasonable for Reliance to find Plaintiff was receiving accrued vacation pay due to his termination.

Plaintiff's own statements undisputedly evidence he was not working full-time in his normal work location at U.S. Xpress after December 31, 2003. Plaintiff's arguments his receipt of a salary or vacation pay in January 2004, defeats the policy's unambiguous definition are insufficient to overrule the administrator's decision. Reliance's determination Plaintiff was not "Actively at Work" is supported by evidence in the record and is rational in light of the plan's provisions. Therefore, it is not arbitrary.

    **B.**    **Date of Disability**

Even if Plaintiff was not "Actively at Work" in January 2004, he may still be eligible for coverage if his "Total Disability" began "on or after" the policy's effective date (AR at p. 1054). Plaintiff argues his "Total Disability" from his back and neck problems did not prevent him from performing the material duties of his occupation until January 2004. Reliance defines "Total Disability" as caused by "Injury or Sickness," thereinafter a claimant "cannot perform the material duties of his regular occupation" (AR at p. 1052). Plaintiff contends his neck and back problems may have constituted a "Partial Disability" because he was performing some, but not all, of the material duties of his occupation during January 2004, but it would not rise to the level of a "Total Disability" until after the Reliance policy went into effect.

In support of Reliance's determination Plaintiff's Total Disability began prior to January 1, 2004, Reliance relied on Plaintiff's claimed date of disability to the Social Security Administration of December 17, 2003 (AR at p. 2983), Plaintiff's own declaration of his last day attempting to work

10

of December 19, 2003 (AR at p. 9), Plaintiff's reporting of his last day of work as "12-19-03" in his application for Unum benefits (AR at p. 304), and Plaintiff's prior pleadings before this Court asserting his disability began prior to January 2004 (Court File No. 27, p. 2 ("His last day in the office was December 31, 2003 . . . [w]hile [U.S. Xpress] continued to pay Plaintiff until January 16, 2004, it is evident from the record that Plaintiff was unable to actually perform work from December 31 until that time."); Court File No. 31, p. 3 ("[h]ere, while Plaintiff was paid through January 16, 2004, there is no evidence whether he actually performed any work from home to earn that pay")). Although the Social Security Administration definition of "disability" is different than Reliance's definition, the Social Security approval of benefits, at a minimum "provides support for the conclusion that an administrative agency charged with examining" Plaintiff's medical records, found objective support for its decision as to disability. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005). The Social Security determination is just "one factor the Court should consider, in the context of the record as a whole," in determining whether Reliance's decision was arbitrary and capricious. *Id.* at 295.

Reliance's determination of disability is supported by evidence in the record, including Plaintiff's own assertions, and is rational in light of the policy definition. Reliance has offered a reasoned explanation, based on the evidence and therefore the Court finds Reliance's determination Plaintiff's disability began prior to January 1, 2004, is not arbitrary and capricious.

### C. Coverage under Unum Policy

Because this Court has determined Plaintiff was not "Actively at Work" in January 2004, Plaintiff asks this Court to revisit its prior holding with respect to Unum. Plaintiff argues the salary he received in January 2004 would not constitute "earnings." Because Plaintiff had continuous long-

11

term disability coverage, he argues he must be covered under either Unum's or Reliance's policies. Each policy, however, must be interpreted in light of its own provisions and in order to receive benefits, Plaintiff must satisfy the terms of the individual policy. Unfortunately in this case, Plaintiff has failed to meet either policy's requirements for coverage for completely different reasons. The Court, having previously determined Unum's denial of benefits was not arbitrary and capricious (Court File No. 33), sees no reason to revise its earlier decision due to its decision in favor of Reliance.

As this Court previously indicated in its 2007 ruling, Plaintiff's ability to recover is based on whether the policy in effect at the time of Plaintiff's disability covers Plaintiff's claims (Court File No. 33, p. 9). Plaintiff's failure to satisfy the criteria for a disability under one policy does not necessarily preclude his recovery under another. *See Hansen v. Metro. Life Ins. Co.*, 192 F. App'x 319, 323 (6th Cir. 2006) ("In ERISA cases, disability is not a term of art, but one that varies from plan to plan.") (citing *Calvert*, 409 F.3d at 294 n.4). Conversely, Plaintiff's failure to satisfy the criteria of one policy does not entitle him to recover under the other. Plaintiff's obstacle to recovery is he fails to satisfy either insurer's reasonable interpretation of its policy. The Court finds no reason to reverse its prior holding in favor of Unum because upholding Reliance's denial of benefits has no effect on the Court's decision with regard to Unum's policy language.

## IV. CONCLUSION

The Court finds the administrative determination by Reliance to be rational in light of the policy language and supported by substantial evidence in the record. Accordingly, the determination was not arbitrary and capricious and will be upheld. The Court will **GRANT** Reliance's motion for

12

judgment on the record (Court File No. 61) and will **DENY** Plaintiff's motion (Court File No. 63).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**